**Entered on Docket**
**April 23, 2010**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: April 22, 2010**

THOMAS E. CARLSON
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>72 TOWNSEND, LLC,<br><br>Debtor. | Case No. 09-33684 TEC<br><br>Chapter 11 |

**MEMORANDUM RE MOTION FOR RELIEF FROM STAY FILED BY NORTHSHORE RESOURCES VIII LP AND NORTHSHORE RESOURCES IX LP**

On January 15, 2010, Northshore Resources VIII LP and Northshore Resources IX LP (collectively, Northshore) filed a motion for relief from the automatic stay to allow it to proceed with its prepetition arbitration against Debtor. The court determined at the initial hearing on February 1, 2010 that relief from stay might not be appropriate if the real property option agreement between the parties were executory under 11 U.S.C. § 365, because Debtor would have the right to reject an executory contract and convert Northshore's claim into a claim for money damages. Accordingly, the court scheduled further proceedings to determine whether the option agreement is executory.

Upon due consideration, and for the reasons set forth below, the court determines that the option agreement is not executory,

and that relief from stay should be granted to allow Northshore to enforce in the pending arbitration action and separate state-court action all of its rights under the Option Agreement (defined below).

**UNDISPUTED MATERIAL FACTS**

On October 28, 2004, Northshore Resources IV LP (Northshore IV) sold real property located at 64-72 Townsend Street in San Francisco, California (the Property) to Lambert Development, LLC (Lambert) for the purpose of developing a mixed-use residential and commercial condominium project. The Property is divided into three separate parcels: 64 Townsend, 66 Townsend, and 72 Townsend. In connection with the sale of the Property, Lambert and Northshore IV agreed that Northshore IV would retain an option to repurchase the commercial portion of the Property, 64 Townsend and 66 Townsend (the Commercial Parcels), and that the option agreement would be executed after the subdivision map was recorded. Northshore IV paid for the agreed-upon option via a substantial reduction in the sale price of the Property. Option Agmt. § 1(a). With Northshore IV's consent, the Property was transferred from Lambert to Debtor on May 22, 2007, subject to Northshore IV's option rights.

On June 29, 2007, Debtor and Northshore IV entered into the Option Agreement For Purchase of Commercial Parcel (the Option Agreement), pursuant to which Northshore had the option to purchase the Commercial Parcels. On June 10, 2009, Northshore IV assigned and transferred its interest in the Option Agreement to Northshore.

The Option Agreement grants Northshore an exclusive and unconditional option to purchase the Commercial Parcels at an exercise price of ten dollars. § 1(a). The Option term commenced



Case: 09-33684 Doc# 74 Filed: 04/22/10 Entered: 04/23/10 11:47:46 Page 2 of 9

on April 27, 2009 (the date the subdivision map was recorded). § 1(c). The Option could be exercised by Northshore giving written notice to Debtor before the October 27, 2009 expiration date. § 1(d).

The Option Agreement requires satisfaction of the following conditions by Northshore: (a) payment of ten dollars, § 2(b)(ii); (b) execution and delivery by Northshore of such assignments, bills of sale, and other documents reasonably necessary to convey title, § 2(b)(iii); (c) compliance with all material obligations under the Option Agreement, § 2(b)(v); (d) written certification that the representations and warranties in the Option Agreement remain true and correct, § 2(b)(vi); (e) approval of the Reciprocal Easement Agreement for recording; and (f) delivery to the title company of additional documents and written escrow instructions reasonably necessary for conveyance of the Commercial Parcels. The Option Agreement also requires Northshore to pay the cost of the title insurance premium for the title policy, the recording of the grant deed, all escrow fees and closing costs, and a pro-rated portion of real estate taxes, utilities, and other property expenses. § 2(c).

On February 17, 2009, construction of the Commercial Parcels was complete and a Notice of Completion was recorded.

On May 22, 2009, Northshore timely exercised its option to purchase the Commercial Parcels.

On June 10, 2009, Northshore e-mailed Debtor a form of the General Assignments and the other required closing documents, including Grant Deeds, Buyer’s Certificates, Seller’s Certificates, and a required certificate related to withholding taxes. The e-mail stated that “unless otherwise notified, we plan on delivering



Case: 09-33684 Doc# 74 Filed: 04/22/10 Entered: 04/23/10 11:47:46 Page 3 of 9

the closing documents to escrow on Friday for signing." Debtor made no requested changes to the General Assignments. On June 15, 2009, Northshore again e-mailed Debtor requesting comments to the closing documents, including the General Assignments, stating "we would like any comments you have to the closing documents by Wednesday so we can circulate final versions of the closing documents by Friday." Debtor did not provide any such comments. On July 10, 2009, Northshore executed the General Assignments in the form that had been provided to Debtor and delivered the General Assignments to escrow. The General Assignments provided to Debtor and delivered to escrow did not include the Schedules referenced in the General Assignments.[1]

On July 8, 2009, Northshore submitted its draft written escrow instructions to the title company for its approval. On July 10, 2009, Northshore delivered executed escrow instructions to the title company.

On July 10, 2009, Northshore deposited into escrow its portion of the closing costs and escrow fees, including payments of taxes, utilities, and property expenses.

On July 22, 2009, Northshore invoked the Option Agreement's arbitration provision, and made its demand for arbitration on Debtor.[2]

On August 31, 2009, Northshore paid ten dollars into escrow.

---

[1] Schedule I, Description of the Property; Schedule II, List of Plans; Schedule III, List of Service Contracts; Schedule IV, List of Warranties.

[2] After making its demand, the parties agreed to an arbitrator, Judge David Garcia of JAMS; Northshore paid the arbitrator's initial fees; and, on September 2, 2009, Northshore served its arbitration statement on Debtor.



Case: 09-33684 Doc# 74 Filed: 04/22/10 Entered: 04/23/10 11:47:46 Page 4 of 9

On September 1, 2009, Northshore filed in San Francisco Superior Court an action against Debtor for specific performance, breach of contract, quiet title, and declaratory relief, Case No. 09-492093 (the State-Court Action).

On November 17, 2009, the Reciprocal Easement Agreement was recorded.

On November 23, 2009, Debtor filed chapter 11, and Northshore submitted to the title company supplemental escrow instructions for the title company's approval.

**LAW**

On request of a party in interest, a court may grant relief from stay for cause. 11 U.S.C. § 362(d)(1). A decision to grant or deny relief from stay is committed to the sound discretion of the bankruptcy court. In re Conejo Enter., Inc., 96 F.3d 346, 351 (9th Cir. 1996). If relief from stay is sought to enforce an arbitration agreement, the bankruptcy court must grant relief from stay, unless the party opposing arbitration establishes that Congress intended to preclude a waiver of judicial remedies for the particular claim at issue. Elec. Mach. Enter., Inc. v. Whiting-Turner (In re Elec. Mach. Enter., Inc.), 479 F.3d 791, 795 (11th Cir. 2007); Mintze v. AGFS, 434 F.3d 222, 229 (3rd Cir. 2006); MBNA America Bank v. Hill, 436 F.3d 104, 109-10 (2nd Cir. 2006). The court assumes, without deciding, that Congress intended to preclude a waiver of judicial remedies for the bankruptcy court to determine whether a contract is executory. The court assumes, without deciding, that if the Option Agreement is executory, the court has discretion to deny relief from stay so that Debtor could reject the Option Agreement and convert Northshore's claim for specific performance into a claim for money damages.



Case: 09-33684 Doc# 74 Filed: 04/22/10 Entered: 04/23/10 11:47:46 Page 5 of 9

Whether the Option Agreement is executory depends upon whether "the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other." Unsecured Creditors Comm. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co., Inc.), 139 F.3d 702, 705 (9th Cir. 1998). Whether failure to complete performance constitutes a material breach excusing performance by the other party is a matter of state contract law. Griffel v. Murphy (In re Wegner), 839 F.2d 533, 536 (9th Cir. 1988). An option contract "may on occasion be an executory contract, for instance, where the optionee has announced that he is exercising the option, but [has] not yet followed through with the purchase at the option price", Helms, 139 F.3d at 706, or if the optionee had other material obligations to perform, such as constructing improvements on the land. Horton v. Rehbein (In re Rehbein), 60 B.R. 436, 441 (9th Cir. BAP 1986) (dictum).

Debtor acknowledges Northshore's exercise of the Option, but contends that the Option Agreement is executory for the following reasons: (1) because the draft General Assignments prepared by Northshore were never expressly approved by Debtor and did not include any of the required Schedules; (2) because Northshore filed a lis pendens that attaches to *all* of Debtor's property, including Debtor's real property at 72 Townsend Street and failed to release the lis pendens and to dismiss the State-Court Action; and (3) because Northshore submitted unexecuted, supplemental draft escrow instructions to the title company, which instructions point to additional closing items not completed as of the petition date.[3]

[3] These additional closing items were: a form of grant deed approved by Northshore; a state withholding certificate requested from Northshore; issuance of a title policy that is not subject to

Whether a breach is material is a question of fact, and is determined with reference to the effect of the breach on the non-breaching party. Coughlin v. Blair, 41 Cal. 2d 587, 599 (1953); Associated Lathing & Plastering Co. v. Louis C. Dunn, Inc., 135 Cal. App. 2d 40, 49-51 (1995). The breach of a non-material term does not excuse the non-breaching party from performing its obligations under the contract. Karz v. Dept. of Prof. & Vocational Stds., 11 Cal. App. 2d 554, 557 (1936). A breach that occurs at the inception of a contract is more likely to be considered material, because it indicates future difficulty in obtaining performance from the breaching party. Whitney Inv. Co. v. Westview Devp. Co., 273 Cal. App. 2d 594, 602 (1969); Associated Lathing, 135 Cal. App. 2d at 49-50. A party to a contract is not entitled to rescind or abandon a contract for an alleged breach of that contract when the breach does not go to the root of the consideration. Walker v. Harbor Business Blocks Co., 181 Cal. 773, 780 (1919); accord 12 Miller & Starr Cal. Real Estate § 34:2 (3rd ed. 2008).

The evidence demonstrates that, as of the petition date, Northshore had fully performed all of its material obligations under the Option Agreement and that, nothwithstanding the supplemental escrow instructions, the only remaining acts to be performed were ministerial acts related to the closing of escrow. That *Debtor* failed to execute the General Assignments prepetition and failed to provide Northshore with the Schedules to the General

---

the SB Architects mechanics lien; issuance of title policy endorsements; Northshore's payment of prorated taxes, utilities, and property expenses; further authorization to close escrow following receipt Debtor's "Deliveries and other conditions;"; and Northshore's approval of the revised General Assignments with schedules.

Assignments does not mean that *Northshore* failed to perform a material obligation. Northshore had fully performed its obligation with respect to the General Assignments prepetition when it provided two rounds of drafts to Debtor for review and comment, and when it thereafter executed the General Assignments, having received no comments from Debtor. That Northshore mistakenly included a legal description of the Residential Parcel when it recorded its lis pendens also does not render the Option Agreement executory, because Northshore's independent obligation to modify the lis pendens is not a requirement under the Option Agreement, and does not excuse Debtor's performance under the Option Agreement.

The only Ninth Circuit cases cited by Debtor do not support its argument that the Option Agreement is executory. In Benevides v. Alexander, 670 F.2d 885 (9th Cir. 1982), the court held that the purchase and sale agreement regarding Defendant's home remained executory because, *inter alia*, Plaintiffs had not paid the full amount required under the contract. In In re Sigel & Co., Ltd., 923 F.2d 142 (9th Cir. 1982), the joint venture agreement was held to be executory, because the non-defaulting party had neither tendered nor offered to tender any amount to acquire the defaulting party's interest in the joint venture. As noted above, Northshore fully paid the Option Consideration when it sold the Property at a substantially reduced price.[4]

---

[4] The other four cases cited by Debtor are not Ninth Circuit cases. Three of the four cases define executory contracts in a different manner than the Ninth Circuit. The other case is irrelevant. In re Simon Transportation Svcs., Inc., 292 B.R. 207 (Bankr. D. Utah 2003) and Sipes v. Atlantic Gulf Communities Corp. (In re General Devp. Corp.), 84 F.3d 1366 (11th Cir 1996) both applied a "functional approach", evaluating whether assumption or rejection would ultimately benefit the estate and its creditors. This approach has never been adopted by the Ninth Circuit. In re



Case: 09-33684 Doc# 74 Filed: 04/22/10 Entered: 04/23/10 11:47:46 Page 8 of 9

Because no material obligations remained on Northshore's part, the Option Agreement is no longer executory. The court determines that the consideration for the Option Agreement was fully paid prepetition when Northshore IV sold the Property at a substantially reduced price, and that Northshore in substance became the equitable owner of the Commercial Parcels when it gave written notice of its exercise of the Option. Accordingly, relief from stay should be granted.

**CONCLUSION**

The Option Agreement is not executory. The court will enter an order granting relief from stay to permit Northshore to enforce in the pending arbitration and State-Court Action all of its rights under the Option Agreement, provided that Northshore may enforce a judgment against Debtor for money damages only in this bankruptcy case, and conditioned upon Northshore's release of the Residential Parcel from the recorded lis pendens.

****END OF MEMORANDUM****

---

W&L Associates, Inc., 71 B.R. 962 (Bankr. E.D. Pa. 1987) did not define executory contract with reference to the materiality of a party's breach. Finally, In re Sun Belt Electrical Contractors, Inc., 56 B.R. 686, 688-89 (Bankr. N.D. Ga. 1986) is irrelevant to the present dispute. Sun Belt concerned whether a failure to issue checks jointly payable to a construction contractor and its materials supplier constituted a material breach.



Case: 09-33684 Doc# 74 Filed: 04/22/10 Entered: 04/23/10 11:47:46 Page 9 of 9